

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD JANDA, | ) |
| Plaintiff, | ) No. 05 C 154 |
| v. | ) Judge Ronald A. Guzmán |
| RON KWIATKOWSKI, DAVID EHLE, RICHARD KALIVODA, SAM CANERDAY and CITY OF BERWYN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Leonard Janda has sued defendants pursuant to 42 U.S.C. § ("section") 1983 for their alleged violations of his constitutional rights and state law. The case is before the Court on defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), one filed on behalf of Kwiatkowski, Ehle, Kalivoda and City of Berwyn, and another filed on behalf of defendant Canerday. For the reasons set forth below, the motions are granted in part and denied in part.

### Facts

Viewed favorably to plaintiff, the facts are as follows. Plaintiff is a firefighter employed by defendant the City of Berwyn. (Defs.' LR 56.1(a) Stmt. ¶¶ 1-2.) Defendants Kwiatkowski and Ehle are Berwyn police officers, defendant Kalivoda is Berwyn's Fire Chief, and defendant Canerday is a City police commander. (*Id.* ¶ 2; Canerday's LR 56.1(a) Stmt. ¶ 35.)

On October 1, 2004, plaintiff fell at the firehouse and injured his back. (Defs.' LR 56.1(a)

Stmt. ¶ 3.) He was taken to a hospital, treated and released. (*Id.* ¶¶ 4-5.) After his release, plaintiff went back to the firehouse, picked up his belongings, gave a doctor's note to his supervisor and started to drive home. (*Id.* ¶ 6.)

Before he arrived home, however, plaintiff received a call from a co-worker, asking him to return to the firehouse to speak to some police officers about his accident. (*Id.* ¶ 7; Pl.'s LR56.1(b)(3)(B) Stmt. ¶ 7.) Plaintiff asked to speak to his supervisor, who reiterated the request. (Defs.' LR 56.1(a)(3) Stmt. ¶ 8.) Consequently, plaintiff returned to the firehouse. (*Id.*)

When he got there, plaintiff discussed the accident with Kwiatkowski and Ehle for about ten minutes. (*Id.* ¶ 12.) The two officers then told plaintiff they needed to take photographs of his injuries. (*Id.* ¶ 13.) Plaintiff objected, and spoke to his union steward and union president, both of whom happened to be in the building, about the situation. (*Id.* ¶ 14.)

Plaintiff and the union president, Sam Molinaro, went to speak to Chief Kalivoda about the request for photographs. (*Id.* ¶ 15.) Kalivoda called Canerday, who said that the City was implementing a policy of photographing injuries sustained on its property and Kalivoda had to follow it. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 37.) Molinaro told Kalivoda that plaintiff would allow photos to be taken only if Kalivoda directly ordered him to do so. (*Id.* ¶ 39.) Kalivoda so ordered, and plaintiff, who could not disobey a direct order, complied. (*Id.* ¶¶ 41, 45.)

Subsequently, plaintiff and the officers went to a private area of the fire station to take the photographs. (Defs.' LR 56.1(a) (3) Stmt. ¶ 16.) Plaintiff removed his shirt and pulled down his pants to expose his injuries. (*Id.* ¶ 18.) After the officers had taken several pictures, Molinaro told them to stop and instructed plaintiff to get dressed. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 51-53.)

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Plaintiff asserts eleven claims against defendants, six federal claims and five state claims. The federal claims, which are all grounded in section 1983, are in Counts I (Fourth Amendment unreasonable search claim), II (Fourth Amendment false arrest claim), VI (conspiracy claim), IX (Fourteenth Amendment substantive due process claim), X (Fourteenth Amendment privacy claim) and XI (*Monell* claim against the City ). The state claims are in Counts III (false arrest), IV (indemnification claim), Count V (*respondeat superior* claim), Count VII (conspiracy claim) and Count VIII (invasion of privacy claim). Defendants say they are entitled to judgment as a matter of law on all eleven claims.

## Motion of Kwiatkowski, Ehle, Kalivoda and the City

In Count I, plaintiff alleges that the individual defendants are liable under section 1983 for violating his Fourth Amendment right to be free from unreasonable searches. The protection of the Fourth Amendment is not limited to searches conducted during criminal investigations. Rather, "[a]

3

search within the meaning of the fourth amendment occurs when[ever] the government intrudes upon an individual's legitimate expectation of privacy." *Darryl H. v. Coler*, 801 F.2d 893, 900 (7th Cir. 1986). Moreover, our court of appeals has noted, "even a limited search of a person is a substantial invasion of privacy." *Id.* Thus, the photographs of which plaintiff complains are within the ambit of the Fourth Amendment.

The next question is whether defendants' taking of the photographs was reasonable. It was if: (1) defendants had justification for taking the photographs; and (2) taking them was "'reasonably related in scope to the circumstances'" that prompted defendants to do so. *Id.* at 903 (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

The record establishes that defendants had justification for taking the photographs. It is undisputed that they did so in the course of investigating plaintiff's injury, which they did pursuant to a City policy that required the police to investigate and report on all injuries occurring on City property. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 9-12; Defs.' LR 56.1(a) Stmt., Ex. 5, City 30(b)(6) Dep. at 12-13.) Moreover, as plaintiff admits, those reports are used to prepare for potential litigation, facilitate the evaluation of workers' compensation issues, and determine whether City-owned property is in need of replacement or repair. (*Id.* at 14-15; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 10-11.) Those are sufficient justifications for the search. *See Narducci v. Vill. of Bellwood*, 444 F. Supp. 2d 924, 931-32 (N.D. Ill. 2006) (holding that government agency's desire to "end[] the intimidation of Finance Department employees by customers and reduc[e] . . . excessive personal calls or [employees'] rude and unprofessional behavior" were "legitimate justifications" for recording its employees' telephone calls).

The next question is whether the search was reasonable in scope. The answer to that question

4

"depends on the context within which the search takes place" as well as "the scope of the particular intrusion, the manner in which [the search was] conducted, the justification for initiating it, and the place in which it [was] conducted." *Darryl H.*, 801 F.2d at 900, 902-03 (7th Cir. 1986) (quotation omitted). If the material facts are undisputed, the reasonableness of a search "is analyzed objectively, and as a matter of law." *Bell v. Irwin*, 321 F.3d 637, 640-41 (7th Cir. 2003).

The relevant facts are largely undisputed. Plaintiff fell on some stairs at the fire station and was treated for his injuries at a hospital. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 3-4.) After he was released, he stopped by the station to pick up his belongings and give the doctor's note to his supervisor. (*Id.* ¶¶ 5-6.) While he was driving home from the station, a co-worker called him and asked him to return to the station to talk to the police about the accident. (*Id.* ¶ 7.) After confirming this instruction with his supervisor, plaintiff complied. (*Id.* ¶ 8.) At the fire station, plaintiff talked with Ehle and Kwiatkowski about the accident for about ten minutes. (*Id.* ¶ 12.) The officers then told plaintiff they needed to photograph his injuries. (*Id.* ¶ 13.) Plaintiff objected, and voiced his complaints to Molinaro, who spoke to Kalivoda about the situation. (*Id.* ¶¶ 14-15.) Afterwards, plaintiff says, Kalivoda ordered him to allow the officers to photograph his injuries. (Pl.'s LR 56.1(b)(3)(C) ¶¶ 41.) At that point, plaintiff and the officers went to a private area of the firehouse, plaintiff partially disrobed, and Ehle and Kwiatkowski took several photographs of him. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 16, 18.)

Though defendants' desire to investigate plaintiff's accident was legitimate, the method they chose was far too intrusive. This was a routine inquiry into a work-related injury, not a criminal investigation. Given the context, plaintiff's statements and medical records would have been sufficient documentation of his injuries. Defendants did not need photographs of plaintiff partially

5

clad to document the accident, prepare for potential litigation or otherwise protect the City's interests. Consequently, the Court cannot find that the search was reasonable. *See Crowe v. County of San Diego*, 359 F. Supp. 2d 994, 1022 (S.D. Cal. 2005) (holding that police, who took nude photographs of murder victim's sister to determine whether she had been abused, acted unreasonably because their suspicion could have been investigated without taking photographs). Defendants' motion for summary judgment on Count I is denied.

In Counts II and III of his amended complaint, plaintiff asserts claims for false arrest under section 1983 and state law, respectively. At plaintiff's request, the Court dismisses these claims.

In Count IV, plaintiff asserts that the City is liable for any judgment rendered against the individual defendants pursuant to 745 Ill. Comp. Stat. 10/9-102, which says: "A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable . . . ." The City contends that this statute makes it the insurer of its employees but does not confer a cause of action on plaintiff. In *Wilson v. City of Chicago*, the Seventh Circuit rejected this argument:

> The City argues that . . . section 9-102 comes into play only when a judgment is formally entered against its employee; . . . There is surely *something* to the City's argument; the City cannot be made to pay a judgment while the liability of its employee is still in question, and we do not read *Argento v. Village of Melrose Park, supra*, 838 F.2d at 1489-90, to mean that Wilson could have sued the City directly without proceeding against [the employee]. It does not follow that Wilson could not proceed under section 9-102 until the judgment against [the employee] became final. The City concedes as it must that if it disobeys the direction in the statute . . . , the plaintiff can obtain a judgment against it. Once it became clear, therefore, as it did shortly after we remanded the case, that the City would not pay a judgment when and if one was entered against its employee, the plaintiff, in order to expedite the collection of the judgment, could ask the court to enter a judgment against the City that would take effect when and if a judgment against [the employee] was entered and no longer contestable.

6

120 F.3d 681, 684-85 (7th Cir. 1997). The fact that a judgment has not yet been rendered against any City employee does not, therefore, impact the viability of Count IV.

In Count V, plaintiff asserts that the City is liable for the individual defendants' alleged conduct under the doctrine of *respondeat superior*. As the City points out, there is no *respondeat superior* liability under section 1983. *See Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 691 (1978). But plaintiff is trying to impose *respondeat superior* liability on the City for its employees' alleged violations of state, not federal, law in this count. Defendants do not argue that the City is immune from *respondeat superior* liability for the state claims. Thus, their motion for summary judgment on Count V is denied.

In Counts VI and VII, plaintiff asserts that defendants conspired to violate his state and federal rights in violation of section 1983 and state law, respectively. In Count XI, plaintiff seeks to hold the City liable under section 1983 for the alleged violations of his constitutional rights. The only argument defendants offer to support their motions on these claims is that plaintiff has not raised a genuine issue of fact as to whether any of his rights were actually violated. However, as discussed above and below, plaintiff has viable Fourth Amendment, state and federal conspiracy, and state and federal invasion of privacy claims. Thus, defendants' motions for summary judgment on Counts VI, VII and XI is denied.

In Counts VIII and X, plaintiff asserts that the individual defendants' conduct violated his state and Fourteenth Amendment rights to privacy. Defendants say these claims fail because the evidence shows that Janda consented to being photographed, negating a critical element of these claims. *See Whalen v. Roe*, 429 U.S. 589, 599 & n.23 (1977) (stating that Fourteenth Amendment right to privacy protects, among other things, an individual's "interest in avoiding disclosure of

7

personal matters"); *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004) (stating that tort of invasion of privacy requires proof that "the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion"), *appeal denied*, 829 N.E.2d 786 (Ill. 2005). Viewed favorably to Janda, however, the record suggests that he did not consent to being photographed but submitted to the process only because Chief Kalivoda ordered him to do so. (*See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 32-41, 45.) Because Janda has raised a triable fact issue as to whether he consented to being photographed, defendants are not entitled to judgment as a matter of law on Counts VIII and X.

In Count IX, plaintiff alleges that defendants' conduct violates his Fourteenth Amendment right to substantive due process. Defendants say this count should be dismissed because substantive due process comes into play only if there is no other constitutional basis for plaintiff's claims. Because unreasonable searches and unwarranted invasions of privacy are specifically prohibited by the Fourth and Fourteenth Amendments, defendants say those are the provisions that control plaintiff's claims.

The Court agrees. As the Supreme Court has said, when "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quotations omitted). Accordingly, defendants' motions for summary judgment on Count IX are granted.

## Canerday's Motion

Defendant Canerday adopts the other defendants' arguments, which are addressed above. In addition, however, Canerday argues that he is entitled to judgment on plaintiff's claims because his involvement in the alleged conduct was too tenuous to support liability. Because he did not photograph, speak to, or interact in any with plaintiff, Canerday says he cannot be held liable in this suit.

The Court disagrees. Canerday admits that he: (1) knew a firefighter had been injured on City property; (2) knew police officers had been dispatched to investigate and report on the accident; and (3) directed that a supervisory officer be sent to the fire house "to make sure that [the investigating officers] completed the report and took photographs." (Canerday's LR 56.1(a) Stmt. ¶¶ 36-39.) In other words, Canerday admits that the photographs on which this suit is based were, at a minimum, taken with his knowledge and consent. That admission is sufficient to expose him to liability in this suit. *See Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (stating that an individual defendant "satisfies the personal responsibility requirement of section 1983 if . . . the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge or consent" (quotation omitted)); Restatement (Second) of Torts § 877 (1979) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . orders or induces the conduct, if he knows or should know of circumstances that would make the conduct tortious if it were his own . . . .").

## Conclusion

For all of the reasons stated above: (1) Counts II and III are dismissed at plaintiff's request; and (2) there is no genuine issue of material fact as to Count IX, and defendants are entitled to judgment as a matter of law on that claim. Defendants' motions for summary judgment [doc. nos. 32 & 50] are, therefore, granted as to Count IX, but in all other respects are denied.

**SO ORDERED.**  **ENTERED:** 1/23/07

**HON. RONALD A. GUZMAN**
**United States District Judge**